## Charles Taylor, Defendant in Error, v. Peoria & Eastern Railway Company, Plaintiff in Error.

1. PLEADING—*what admitted by general issue.* Where a liability is charged against a railway company on account of acts of negligence committed by its lessee, unless there is a special plea denying the relationship of lessor and lessee the defendant will be regarded as having admitted the relationship.

2. PLEADING—*when declaration sufficient after verdict.* A declaration though informal is sufficient after verdict.

Action in case. Error to the Circuit Court of McLean county; the Hon. C. D. MYERS, Judge, presiding. Heard in this court at the May term, 1909. Affirmed. Opinion filed June 4, 1910.

GEORGE B. GILLESPIE, for plaintiff in error; L. J. HACK-
NEY, HAMLIN, GILLESPIE & FITZGERALD, and J. P. LIND-
LEY, of counsel.

WELTY, STERLING & WHITMORE, for defendant in error.

MR. JUSTICE PUTERBAUGH delivered the opinion of the
court.

It is sought by this writ of error to procure the reversal of
a judgment for $2,500 rendered against plaintiff in error
in an action in case. The first and second counts of the dec-
laration charge substantially that while the plaintiff, in the
exercise of due care, was driving across the railway of the
defendant upon Morris avenue in the city of Bloomington,
about June 30, 1907, a passenger train, negligently operated
by the servants of the C. C. C. & St. L. Railway Company,
the lessee of the defendant, run upon and against the vehicle
in which the plaintiff was riding and that he was thereby
thrown to the ground and injured. The third count is here-
inafter set forth. In addition to the general issue, the de-
fendant filed special pleas, denying, first, that the Peoria &
Eastern Railway Company on June 30, 1907, the time of
the supposed injuries, owned the said railroad, road-bed,
right of way or locomotive engine and cars attached; and,
second, denying that the Cleveland, Cincinnati, Chicago &
St. Louis Railway Company was at the time operating said
railroad or said engine and cars; to which special demurrer
was sustained. At the close of the plaintiff's evidence, and
again at the close of all the evidence, motions by the defend-
ant to direct a verdict in its favor were overruled.

The evidence discloses that at about five o'clock on the
evening of Sunday, June 30, 1907, the plaintiff, Charles
Taylor, in company with one Ferris, was riding north on
Morris avenue in the city of Bloomington, in a buggy drawn
by a horse owned and driven by Taylor, and that while cross-
ing the railroad tracks of defendant at Morris avenue, the
vehicle was struck by a regular west-bound passenger train
on said road. Taylor was severely injured, Ferris instantly

killed, and the horse also was killed and the buggy demolished. Morris avenue leads south to one of the main entrances to Miller Park, to which it is the main thoroughfare for that part of the city. The railroad enters the city of Bloomington at the southwest, running westward, and a little to the north, through the city. The evidence further shows that after crossing Allin street, which runs north and south three blocks east of Morris avenue, it turns somewhat sharply to the north, crossing Front street, which runs east and west, and then turns sharply toward the west, striking Morris avenue, about midway between Front street on the south, and Washington street, the first street north, and then follows the line of the alley in those blocks between Front street and Washington street and west of Allin street.

The evidence adduced by the plaintiff tends to show that upon the lots south of the railroad tracks and between the tracks and Front street, were situated residences, trees, coal sheds, fences, etc., which completely obstructed all view of the railroad right of way to a person on Morris avenue anywhere north of Front street, and that a person on Morris avenue would have to be practically on the track before he could see a train approaching from the east any distance beyond the east line of Morris avenue. Such evidence further tends to show that as Taylor approached the crossing, but before reaching it, he slowed the horse down from a trot to a walk, and looked west along the line of the railroad to see if any train was coming from that direction, then turned to look east, and that just as he turned the train coming from that direction appeared behind a coal house, and struck the buggy. A number of witnesses who were traveling toward the crossing at the time testified that they did not hear any alarm sounded.

The evidence introduced by the defendant upon these issues tended to show that by looking toward the east, the plaintiff could have seen this train as it crossed Grove street and as it crossed Front street; that from the time he passed the northeast corner of Front street and Morris avenue, he could have seen the train while he was driving a distance of

fifteen feet, as it was traversing a stretch of track about one hundred feet long; that by looking toward the east, at a distance of nineteen feet from the track, he could have seen the train eight or nine hundred feet distant, and that he drove immediately upon the track without seeing the train, which was within ten feet of the crossing, moving so slowly that it was stopped within sixty feet after the accident occurred; that about the time the plaintiff started from Grove street, which is two blocks south of the crossing, the train in question was whistling for Allin street crossing, which was just west of Grove street crossing; that about the time the plaintiff reached Front street the train was passing Front street crossing, a distance of 1040 feet east of the crossing of that street with Morris avenue; that the bell on the locomotive was ringing as it crossed Grove, Front and Howard streets and the locomotive whistled two crossing whistles of four blasts each between Main street and the crossing with Front street, and that the train was running at the rate of not greater than ten miles per hour.

It further appears from the evidence that in 1905 the city council of the city of Bloomington passed an ordinance requiring the defendant to establish and maintain gates at this crossing, and that such gates should be operated by a gateman every day in the week from seven o'clock A. M. to seven o'clock P. M.; that the defendant thereafter established such gates, and a tower from which to operate them, but that it failed to operate them on Sundays. The plaintiff testified that while he knew the gates were there and had seen them operated, he was not aware that they were not operated on Sunday.

The complaint that the court erred in sustaining demurrers to the special pleas is well-founded. It is the settled rule of practice in this state that where a liability is charged against a railway company on account of acts of negligence committed by its lessee, unless there is a special plea denying the relationship of lessor and lessee the defendant will be regarded as having admitted the relationship. In other words, if the defendant wishes to challenge the right in which the

plaintiff sues or the character in which the defendant is sued, it must be done by special pleas. McNulta v. Lockridge, 137 Ill. 270; Pa. Co. v. Chapman, 220 Ill. 428; Union Traction Co. v. Jerka, 227 Ill. 95. The plaintiff, however, introduced competent evidence to establish affirmatively the facts controverted by such pleas, and thus fully assumed the burden cast upon him by their interposition, rendering the error harmless.

It is insisted that in view of the fact that the declaration failed to charge a failure to ring the bell or sound the whistle of the locomotive, it was error to allow the plaintiff to make a feature of that issue by emphasizing the same, and thus lead the jury to believe that the failure to do so established of itself a substantive right of recovery; that such evidence was competent only as an incident to the accident but did not constitute a distinct and separate ground of action. The evidence in question was not only competent as part of the *res gestæ*, but as well as tending, as it did, to establish the general charge of common law negligence in the first and second counts of the declaration, and, further, upon the question of due care on the part of the plaintiff. I. C. R. R. Co. v. Aland, 192 Ill. 37; Malott v. Schlosser, 119 Ill. App. 259. In this view it was not error to permit the plaintiff to make as full proof as he desired upon the question.

It is further insisted that the evidence as to the effect of the alleged injuries upon the kidneys and eyes of the plaintiff was improperly admitted; that such conditions were not natural and necessary consequences of the injuries, and thus constituted special damages not specifically charged in the declaration. The error, if any, could only have affected the amount of the verdict and judgment, and it is not urged or argued that the same is excessive. The same may be said as to the claim that a new trial should have been granted because of the newly discovered evidence of Dr. Rogers, which related solely to the extent of the plaintiff's injuries. It is conceded in argument that the fact that by reason of the intoxication of Willard he was rendered unable to appear at the trial, and the defendant thus deprived of the benefit of

his testimony, was not of itself a sufficient reason for granting another trial.

It is further contended that a verdict for the defendant should have been directed, for the reason that there was no evidence tending to prove the negligence charged in the first and second counts in the declaration, and that the third count is fatally defective because it is not therein charged that the failure to operate the gate caused the plaintiff's injury, nor that such failure on that particular occasion constituted negligence. What has been already said disposes of such contention so far as the first and second counts are concerned.

The third count, after alleging the ownership of the railroad by the defendant, the possession and operation of the same by the C. C. C. & St. L. Ry. Co., as lessee of the defendant, the possession and operation by the servants of the former road as lessee as aforesaid, of a passenger train, in the city of Bloomington, on the day of the accident, reads as follows: "and the plaintiff avers that upon said date aforesaid there was in force in said city of Bloomington an ordinance requiring the said C. C. C. & St. L. Ry. Co. to place and keep in operation a gate at Morris avenue in said city of Bloomington and that the same was to be in operation on every day of the week from seven o'clock in the morning until seven o'clock in the evening, and plaintiff avers that the said railway company had installed such a gate at said Morris avenue and that at the time aforesaid the said plaintiff, while in the exercise of due care for his own safety and while the said gates were open, so as to invite people to cross the said railroad, the plaintiff, while attempting to cross said railway in a vehicle or buggy, in which he was then riding, the said vehicle or buggy in which said plaintiff was riding was struck by said engine and train of cars then in charge of the servants of the said C. C. C. & St. L. Ry. Co., and the said plaintiff was then and there, *by the cause aforesaid,* thrown with great force and violence out of said vehicle to and upon the ground, and he was thereby then and there greatly bruised, hurt and

wounded," etc.   While the count is informal and not to be commended as a precedent in pleading, we think it is sufficient in substance, to uphold a verdict.

The alleged failure to operate the gate in conformity to the ordinance was negligence *per se*.  R. R. Co. v. Voelker, 129 Ill. 540.  The words "by the cause aforesaid" in the sense they are employed in the count, obviously refer to such negligence as being the proximate cause of the injury to the plaintiff.   The trial court therefore did not err in refusing to direct a verdict.

It is further urged that the court erred in refusing the 26th instruction offered by the defendant, whereby the jury were informed that there was no count in the declaration charging a failure to ring a bell or blow a whistle in approaching Morris avenue at the time the plaintiff was injured, and instructing them that there could be no recovery in this action for any alleged failure on the part of the train crew to blow a whistle or ring a bell.   Such instruction, if given, would have taken from the jury the question of the negligent management of the train as charged in the first and second counts of the declaration, in support of which, as we have said the evidence of the failure to give the statutory signals was competent.

Under the evidence, which we have hereinbefore stated in substance, the question of due care on the part of the plaintiff was peculiarly one for the determination of the jury, and notwithstanding the conflict in the evidence, we are disposed to hold that their finding was not unwarranted.   The jury was clearly warranted in finding that the defendant was negligent in failing to operate the gates, and that such negligence was the proximate cause of the plaintiff's injuries.   A right of recovery was therefore established.

We find no prejudicial error in the record, and the judgment will be affirmed.

*Affirmed.*