# Raphael Rosenthal et al., Executors, Appellees, v. Chicago & Alton Railroad Company, Appellant.

1. VERDICTS—*when not disturbed.* A verdict will not be set aside on review as against the evidence where not clearly and manifestly against its weight.

2. NEGLIGENCE—*failure to lower crossing gates.* Failure by a railroad company to operate the gates provided at a crossing is negligence *per se.*

3. CONTRIBUTORY NEGLIGENCE—*person crossing tracks.* A person who may be aged and afflicted with a partial loss of sight is not for that reason precluded from a right to use the public streets. Such a person, like all other persons, has a right to rely upon the performance by a railroad company of its duties prescribed by law and ordinance. *Held,* under the evidence, that the plaintiff's intestate was not guilty as a matter of law of contributory negligence in attempting to cross the tracks of the defendant company.

4. ORDINARY CARE—*when instinct of self-preservation may be considered.* If there is no witness to the occurrence in question whose testimony tends materially to enlighten the jury upon the question of the exercise of ordinary care, the jury have a right to consider the natural instinct of self-preservation.

5. ORDINANCES—*when abbreviation of name of railroad company immaterial. Held,* that the abbreviation "C. & A. Ry." contained in an ordinance was used as descriptive of the tracks owned and used by the Chicago & Alton Railway Company.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Logan county; the Hon. T. M. HARRIS, Judge, presiding. Heard in this court at the November term, 1910. Affirmed. Opinion filed May 26, 1911. Rehearing denied October 24, 1911.

BLINN & COVEY, for appellant; SILAS H. STRAWN, of counsel.

BEACH & TRAPP, for appellees. .

MR. PRESIDING JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an appeal by the defendant from a judgment

for $2500 recovered in an action brought by the executors of the will of Silas Rosenthal, deceased, against the Chicago & Alton Railroad Company. The declaration charges that the defendant, on December 7, 1909, drove a certain engine with a tender attached thereto, over Pulaski street in the city of Lincoln, without having given the statutory warning by bell and whistle; that on said day there was in effect in said city a certain ordinance which provided that "at the following crossing of the C. & A. Railway, to-wit: Pulaski street," gates should be constructed and maintained, under the control of a competent watchman, who should operate the same at all times between the hours of seven A. M. and ten P. M. for the purpose of warning the traveling public of danger; and further providing that in the event that any railroad company should violate said ordinance, it should be subject to a penalty of $100 for each day; that the defendant had prior to said time installed and operated a certain gate on Pulaski street, which when lowered extended across the sidewalk and served as a bar to prevent people passing over said railroad tracks when an engine and train of cars were approaching, but that the defendant, on the day in question, negligently failed to operate, and lower said gate, and permitted the same to remain up.

The declaration further charges the existence of an ordinance of said city prohibiting the driving of any locomotive engine or train other than a passenger train, within the limits of said city, at a greater speed than six miles an hour; that in violation of said last mentioned ordinance, the defendant drove said engine and tender at a rate of speed of ten miles per hour. The declaration still further charges the violation of a certain other ordinance of said city providing that every locomotive, railroad car or train of cars while in motion in the night time, should have a conspicuous

bright light shining in the direction in which the train was moving.    Said declaration also charges that said railroad company maintained on the west side of its railroad tracks on Pulaski street, a lumber yard in which were piled large piles of lumber and tile, to the height of ten feet, which obstructed the view of trains approaching along said tracks; that there were on the day in question freight cars standing on one of the side tracks on the west side of said street, which further obstructed the view of the railroad to persons approaching from the west; that it thereby became the duty of the defendant to station a brakeman on the front end of said tender while moving northward toward said crossing, to warn persons about to cross the same, of the approach of said engine and tender, which was backing northward toward said crossing.  The declaration further avers that by reason of the foregoing failure to give warning, and violation of the ordinances in question, the said Silas Rosenthal, while crossing over said crossing from the west, and in the exercise of due care and caution for his own safety, was struck by the tender of said engine and that his death was thereby caused.

The evidence discloses that Sangamon street in the city of Lincoln runs north and south parallel with and immediately west of the defendant's right of way, and that Pulaski street crosses the same running east and west; that the defendant had two main tracks running southwest and northeast across Pulaski street and parallel with Sangamon street; that there were bars or gates on the north and south sides of Pulaski street on each side of the company's tracks, which were worked by a tower-man in a tower south of Pulaski street, from seven A. M. until six P. M.; and when down formed a barrier which prevented persons crossing the tracks; that south of Pulaski street was a yard used for storing lumber, stone and tile.    The evidence fur-

ther discloses that the deceased was at the time he was killed, over seventy-five years of age, and had a cataract over either eye, the effect of which was to totally obscure the sight of one eye and partially that of the other; that he was a dealer in horses and mules, and lived on Sangamon street west of the right of way of the defendant and about a block south of Pulaski street, and that his place of business was on Pulaski street about two blocks east of the right of way of the defendant. At shortly after six o'clock on the day in question, the deceased started to go from his home to a store situated a little over a block east of the track of the defendant, on Pulaski street. He left the sidewalk on the south side of Pulaski street, and started diagonally across the tracks of the defendant. When he arrived at the east main track he was struck by an engine with a tender attached, which was backing north on said east main track, receiving injuries from which he subsequently died. No one saw him until just as he was struck. The evidence shows that the flap of his cap was drawn down over his ears at the time.

There was the usual conflict in the evidence upon such issue, but we cannot say that the finding of the jury that no signals by bell and whistle were given and there was not a white lantern on the rear of the tender, as claimed, was clearly unwarranted. It was not controverted that the gates maintained by the defendant at the crossing in question were not being operated at the time of the accident and that neither of them was lowered so as to prevent the use of the crossing by the public. Such failure to operate the gates was negligence *per se*. R. R. Co. v. Voelker, 129 Ill. 540; Taylor v. R. Co., 156 Ill. App. 151. It is argued that having lived and transacted business in the vicinity for many years, and being thoroughly familiar with the tracks of the defendant and the movement of its trains, having often crossed the street in question, the de-

ceased must have known that the gates at the crossing were not and never had been operated after six o'clock in the evening, and that he could not rely upon them to warn him of an approaching train; that knowing the crossing as he did, with his defective vision, with his cap pulled down and his ears muffled, his attempt to cross the tracks, under the circumstances, was not the act of a reasonably prudent man under like or similar circumstances, that he was therefore guilty of such contributory negligence as to bar recovery by the plaintiff, and that the court should have directed a verdict of not guilty at the close of all the evidence.

Notwithstanding he was aged and afflicted with a partial loss of sight, the deceased still had a right to use the public streets.   He also had the right to rely upon the performance by the defendant of its duty under the law and the ordinance in question.   Schmalfeld v. R. Co., 156 Ill. App. 1.   The fact that there was no light or brakeman on the end of the tender, and no signals by bell or whistle, and that the gates were open, all tended to assure him that he could use the crossing with safety.   The main purpose of the requirements of the gate ordinance was, doubtless, the protection of aged, infirm and afflicted persons who were compelled by reason of necessity or for convenience, to cross, unaccompanied, over railroad tracks on the principal thoroughfares of cities.   Furthermore, there having been no witness to the occurrence whose testimony tended materially to enlighten the jury upon the question, we think that they had the right to consider the natural instinct of self-preservation in determining the issue.   For these reasons, we do not feel warranted in holding, either as a matter of law or of fact, that the conduct of the deceased was not that of a reasonably prudent person.

It is insisted that the court erred in admitting the gate ordinance in evidence, for the reason that no no-

tice of its passage had been given to the defendant company; that it was void because its provisions were unreasonable and the penalty provided harsh and oppressive, and further that the ordinance admitted was not by its terms applicable to the defendant company. The contention that the defendant was not bound by the provisions of the ordinance for the reason that it upon its face applies to the "C. & A. Railway" and not to the "Chicago & Alton Railroad Company," is too technical to warrant extended discussion. It will suffice to say that the words "C. & A. Railway" were undoubtedly used in the ordinance as descriptive of the railway tracks at the crossing intended to be protected, rather than of the corporation owning and using the same. Furthermore, it may fairly be inferred that by conforming to the provisions of the ordinance the defendant recognized its applicability. The remaining objections to the ordinance are, we think, met adversely to the defendant, by what is said in C. & A. Ry. Co. v. Averill, 127 Ill. App. 275, affirmed 224 Ill. 516, and in Perkins v. R. R. Co., 233 Ill. 458. The ordinance was therefore properly admitted in evidence, and its violation is not denied. It is manifest that had the defendant complied with its provisions, the south arm of the gate would have extended entirely across the sidewalk and made it impossible for Rosenthal to have gotten upon the track.

We find no errors in the rulings of the court upon the instructions, and it is not complained that the verdict is excessive. The judgment of the circuit court is affirmed.

*Affirmed.*