**John F. Devine, Administrator, Appellee, v. City of Chicago, Appellant.**

**Gen. No. 17,114.**

1. ORDINANCES—*regulating speed of vehicles do not apply to vehicles of fire department responding to an alarm.* A city ordinance regulating the speed at which vehicles may be driven in the streets does not apply to members of the fire department when responding to a fire alarm.

2. EVIDENCE—*relevancy.* In an action for injuries received by a fireman while driving an engine in response to an alarm, through being thrown from the engine when a wheel thereof struck a hole in the pavement, it is not error to exclude the testimony of one driving a hose cart four or five hundred feet ahead as to how fast he was driving, where it appears from his testimony that he did not see the engine at the time of the accident and did not know how fast it was going.

3. EVIDENCE—*when properly excluded.* In an action for injuries resulting in death, received when a fire engine deceased was driving struck a hole in the pavement and threw him off, it is not error to exclude testimony by the widow as to how much, if any, pension she has received since her husband's death.

4. PRACTICE—*withdrawal of juror.* Motion to withdraw a juror and continue the case is properly denied on exhibition to the court of sensational newspaper articles concerning the case without any showing of the necessary facts by affidavit.

5. DAMAGES—*when not excessive.* A verdict for $10,000 for the death of a fireman leaving a wife and family is not excessive.

Appeal from the Superior Court of Cook county; the Hon. FARLIN Q. BALL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed October 1, 1912. Rehearing denied October 15, 1912.

EDWARD J. BRUNDAGE, CLYDE L. DAY, WILLIAM N. SEXTON and N. L. PIOTROWSKI, for appellant; EDWARD C. FITCH and DAVID R. LEVY, of counsel.

McEWEN, WEISSENBACH, SHRIMSKI & MELOAN, for appellee.

MR. JUSTICE F. A. SMITH delivered the opinion of the court.

Appellant, the city of Chicago, appeals from a judgment of $10,000 rendered against it in the Superior Court of Cook county, in favor of the administrator of the estate of Bartholomew Cloonan, deceased, for damages for the benefit of the widow and next of kin, resulting from the death of plaintiff's intestate, alleged to have been caused by the negligence of appellant.

The amended declaration consisted of one count, charging that appellant negligently permitted certain holes to exist in the pavement of West Twenty-Second street, having had knowledge of the defective condition a reasonable length of time to have remedied it; and alleges that plaintiff's intestate was a member of the city fire department, and that while driving a fire engine to a fire, was thrown off his seat by a jar caused by one of the wheels of the engine striking a hole in the pavement, sustaining injuries which resulted in his death. Demurrer to this declaration having been overruled, the general issue, and two special pleas were filed. The first special plea set out an ordinance of the city of Chicago, Section 1416 of the Municipal Code of 1905, prohibiting riding or driving any horse or other animal or any vehicle upon any public street or way of the city, faster than ten miles an hour, and alleged that deceased, at the time of the accident, was driving at a greater speed than ten miles an hour. The second special plea set out another ordinance, Section 1417 of the Municipal Code, prohibiting any person riding or driving any horse or other animal at a greater speed than four miles an hour when turning the corner of any street or crossing the intersection of any street, and alleged that deceased at the time of the accident, while crossing Throop street at its intersection with Twenty-Second street, or in turning the corner thereof, was driving at a speed greater than four miles an hour.

Twenty-Second street, in the city of Chicago, extends east and west, and crosses Throop street, which runs north and south. Two street car tracks crossed Throop street in Twenty-Second street, and two tracks extended south from Twenty-Second street in Throop street, and the southbound track was connected by a curve and switch with the eastbound or south track of Twenty-Second street.

Cloonan was a member of the fire department of

Chicago and the driver of the fire engine of Engine Company No. 28, stationed at 2867 Loomis street. On April 4, 1905, his company responded to a fire alarm from the vicinity of Fisk and Twenty-Second streets, and Cloonan drove his engine north on Loomis street to Twenty-Second where he turned east, the wheels of his engine running in the rails of the car tracks. When he engine reached the switch and curved in the tracks, at Throop street, the rear wheels slipped off the rails, and one of the wheels struck a hole in the pavement; the engine tipped to one side, though it did not overturn, and Cloonan was thrown from his seat to the ground, and sustained a compound fracture of both legs. He was taken to a hospital, where he died from blood poisoning, resulting from infection of the wounds.

Appellant relies upon the following grounds for reversal of the judgment: The verdict is contrary to the weight of the evidence, which shows that Cloonan was guilty of contributory negligence; the verdict is excessive; the court below erred in its rulings on admission of evidence, and in refusing certain motion made by appellant.

The city makes no contention as to its own negligence upon the evidence. The question of contributory negligence on the part of plaintiff's intestate is the main question presented on this appeal. The evidentiary facts are not controverted except as to the speed at which the deceased was driving at the time he was injured. We have examined the evidence in the record upon that question, and are of the opinion that the verdict of the jury finds a sufficient basis in the evidence, and that we are not justified in reversing the judgment and verdict upon the ground that the evidence does not sustain the judgment. The evidence on the part of the city tends to show that the deceased was driving the engine at a speed of from twelve to eighteen miles an hour; the evidence on the part of

plaintiff tends to show that the deceased, Cloonan, was driving at from four to six miles an hour at the time of the accident. The jury had a right to consider the reasonableness or unreasonableness of the estimate given by the witnesses for the city as to the speed of the horses at the time the accident occurred, and, in our opinion, all the evidence considered, there is no ground for the reversal of the verdict and judgment upon the evidence.

The trial court instructed the jury by Instruction No. 13, that under the law of this state, the ordinances set out in the pleas and offered in evidence, one restricting the speed at which horses may be driven upon the streets to ten miles an hour, and the other to four miles an hour at street intersections, were legal and valid ordinances in force in the city of Chicago at the time of the alleged accident, and that Cloonan was, under the law of this state bound to obey them and conduct himself in accordance therewith at the time and place of the alleged accident, and informed the jury that the fact that Cloonan was a fireman and was engaged in and about his duties as a fireman did not excuse him from obeying the ordinances, and that if he was injured while he was violating the ordinances, or either of them, by driving at a rate of speed in excess of that prescribed in the ordinances, or either of them, and that such violation proximately contributed in any way to bring about the alleged accident, they should find the defendant not guilty.

The trial court also refused to give Instruction No. 5 and No. 6 requested by plaintiff, which, if given, would have informed the jury that if they found from the evidence that at the time of the accident in question the deceased was a member of the fire department of the city of Chicago, and was then and there driving an engine going to a fire in response to a fire alarm, and in driving said engine he was then and there exercising the care which a prudent person would ordi-

narily exercise under similar circumstances, the deceased was not guilty of contributory negligence, and that under the evidence the ordinances offered by the city and admitted in evidence were not binding upon the decedent, and should not be considered by the jury.

The legal position thus taken by the court on the trial is now pressed for our consideration upon the question of contributory negligence, and it is now urged and claimed that if the deceased was violating the ordinances in question, he was guilty of contributory negligence which proximately produced the injury causing his death.

The case of Morse v. Sweenie, 15 Ill. App. 486, is cited in support of the general contention that the ordinances offered in evidence were binding upon the deceased while in the discharge of his duty as shown by the evidence in the case. In our opinion the case does not support the contention. The question presented by the instruction in that case was radically different from the question here presented and the case is not in point.

Appellant also cites the case of Illinois Cent. R. Co. v. Scheevers, 134 Ill. App. 514. In that case the administrator's decedent was fire marshal of the city of Springfield, and while driving to a fire at a rate in excess of that permitted by an ordinance of the city, drove upon the track of the railroad company and came in collision with one of its engines, and it was held upon the evidence in that case that the deceased was guilty of contributory negligence in so doing; and it was incidentally held that the ordinance of the city of Springfield was binding upon the decedent, and to that extent the case supports the contention of appellant here. We are of the opinion, however, upon the authorities cited below that a city ordinance, regulating the speed of vehicles driven upon the streets of a city, does not apply to members of the fire department of the city when responding to a fire alarm.

In State v. Sheppard, 64 Minn. 287, the question arose as to whether a salvage corps, known as the Minnesota Board of Fire Underwriters, were amenable to a city ordinance prohibiting the driving of animals in the streets at a rate of speed exceeding six miles an hour. The court held that such an ordinance as applied to the salvage corps was unreasonable and was not binding upon them, and in arriving at its conclusion, the court put the salvage corps on the same level as the city fire department. The court in that case distinguished the Sweenie case, *supra,* and held it inapplicable.

In the well considered case of Farley v. City of New York, 152 N. Y. 222, in passing upon an ordinance regulating the speed of horses traveling on the street, the court held that such ordinance was intended to regulate the speed of horses traveling on the streets when used for the ordinary purposes of travel, and from the nature of the exigency such ordinance could not apply to the speed of vehicles of the fire department on their way to a fire, saying:

"The safety of property and the protection of life may and often do depend upon the celerity of movement, and require that the greatest practicable speed should be permitted to the vehicles of the fire department in going to fires."

And upon the question of contributory negligences urged in the case, the court said:

"He took the usual risks of an employment of a dangerous character, but he did not assume the risks of the insecurity of streets resulting from the culpable negligence of the city. He was bound in driving to exercise the care which a prudent person would ordinarily exercise under similar circumstances. It was for the jury to say whether he was alert on this occasion, watchful to avoid obstructions which might be in his path, and whether there was any omission on his part of reasonable circumspection and diligence which contributed to the accident."

In the case of Kansas City v. McDonald, 60 Kan. 481, the question was squarely presented to the court as to the right of recovery against the city for Mc-Donald's death, where it was conceded that McDonald was driving a hook and ladder truck belonging to the fire department, at a run through the streets, and was violating the city ordinance against driving any horse, etc., faster than the ordinary traveling gait, or so drive as to endanger the safety of others. In that case Mc-Donald was killed by being thrown from the hook and ladder truck, which struck an obstruction in the street consisting of a pile of rocks. In deciding the case, the court said:

"It is contended that the ordinance was proper evidence to show that McDonald, by its violation, was guilty of contributory negligence. We do not think that the ordinance was intended to govern the actions of firemen or regulate the speed of fire engines or trucks. Such an intention is nowhere expressed, and, if it had been, the ordinance would have been unreasona-·ble. Cities do not provide horses of high mettle, trained to propel speedily apparatus for the extinguishment of fires, and then impede them in their progress by a requirement that they shall not be driven faster than an ordinary traveling gait. Various appliances have been devised by which such horses are harnessed with incredible speed, that no time may be lost in reaching the fire with hose and other aids to prevent the destruction of property. It is of first importance that a fire be reached in its incipiency. To accomplish this purpose, the utmost haste is necessary. A compliance with this ordinance by the firemen and the enforced delay required by its terms would convert the fire department into a purely ornamental adjunct to the city government—proficient only on parade."

It is urged as a ground for reversal that the trial court erred in excluding the testimony of Captain O'Dea as to how fast he himself was driving at the time of the accident in question. Captain O'Dea was driving a hose cart some distance ahead of the engine

which the plaintiff's intestate was driving. According to his testimony he was some four or five hundred feet ahead of the engine. He testified that he could not state the rate at which the engine was going at Throop street. It appears from his evidence that he did not know how fast the engine was going at the instant of the accident, as he was four or five hundred feet from the point of the accident. He did not see the engine after he turned east into Twenty-Second street at the corner of Loomis street, and did not see Cloonan at the time of the accident. We do not think that O'Dea's testimony as to how fast he himself was driving was pertinent to the issue in the case.

It is also urged as error that the court excluded the testimony of Mrs. Josephine Cloonan, widow of the deceased, on the question of how much, if any, pension she had received since the time of her husband's death. In our opinion this testimony was properly excluded. Coots v. Detroit, 75 Mich. 628; Kansas City v. McDonald, *supra;* Illinois Cent. R. Co. v. Prickett, 210 Ill. 140.

In our opinion the court did not err in denying appellant's motion to withdraw a juror and continuing the case. It appears that on the evening of February 9th, the court adjourned until ten o'clock the following morning. At the time of adjournment, appellee's counsel had made his opening argument and counsel for appellant had completed their argument to the jury. There remained the closing argument of counsel for appellee. The afternoon edition of the Chicago Daily News of February 9th contained in its first page a lengthy sensational article on the case. This article contained a statement of a dramatic and sensational occurrence at the hospital to which Cloonan was taken, which was not in evidence, as well as other comments on the case. The Chicago Tribune, Inter-Ocean, the Record-Herald, and the Chicago Examiner, published on the morning of February 10th, also contained articles on the case. At the opening of the court on the

morning of February 10th, and before appellee's counsel began his closing argument to the jury, appellant's counsel exhibited the articles above enumerated to the court and moved for leave to withdraw a juror and continue the case on the ground that the jury having read the articles would be prejudiced· thereby.  This motion was denied by the court, and error is assigned upon it.  No affidavit was presented to the court at the time the motion was made.  We think the mere presentation to the court of the articles in question, without any showing of the necessary facts by affidavit, such as was later made on the motion for a new trial, forms no legal basis for the motion, and the motion was properly denied.

In our opinion the court did not err in denying appellant's motion to direct the jury to find appellant not guilty.

We do not regard the damages awarded by the jury as so excessive as to justify us in reversing the judgment.  We cannot say that the verdict and judgment for $10,000 more than satisfied the pecuniary loss of Cloonan's wife and family occasioned by his death.  The judgment is affirmed.

*Affirmed.*